JKMcD: USAO 2014R00784

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. WDQ-14-0591 |
| | * | (Conspiracy to Commit Bank Fraud, |
| ANGELA M. BLYTHE, | * | 18 U.S.C. §1349; Bank Fraud, 18 |
| | * | U.S.C. §1344; False Statement to a |
| Defendant. | * | Bank, 18 U.S.C. §1014; Aiding and |
| | * | Abetting, 18 U.S.C. §2; Forfeiture) |

*******

## INDICTMENT

## COUNT ONE

The Grand Jury for the District of Maryland charges that:

### Introduction



At all times relevant to this Indictment:

1. Defendant **ANGELA M. BLYTHE** (hereafter "BLYTHE") was an attorney licensed to practice in West Virginia and Maryland. Her office was located first at 316 Alder Street, Oakland, Maryland and later at 3 South Third Street, Oakland, Maryland.

2. Samuel R. VanSickle (hereafter "VanSickle") was a resident of Garrett County and owned and developed property in Garrett County, Maryland and West Virginia.

3. From in and around September 1998 through in and around September 2001, **BLYTHE** represented Samuel R. Vansickle( hereafter "VanSickle") and his company Mutual Trust Contracting, Inc., in a civil law suit in the Circuit Court for Garrett County in which VanSickle and his company were accused of civil fraud in the sale of a tract of land in Garrett County.

4. As part of her law practice, **BLYTHE** acted as a settlement attorney for real estate transactions and had the authority to issue title insurance policies for Chicago Title Insurance Company.

5. A settlement attorney owes a fiduciary duty to the parties involved in a property settlement including the buyer, seller, title insurer and lender, if any. When closing a real estate transaction, the settlement attorney's duties include: (1) verifying the identities of the parties to the transaction, (2) receiving all sums of money necessary for the closing including loan proceeds, if any, and all sums paid by or on behalf of the borrower; (3) disbursing all sums due to the seller in accordance with the instructions of the lender; (4) issuing a lender's title insurance policy, if required by lender; (5) accurately stating the amounts collected and disbursed at closing on a settlement statement and (6) providing the settlement documents to the parties including copies of deeds, mortgages, and settlement statements.

6. In connection with his property transactions, VanSickle used the aliases Donald Blunt, Trustee of Freedom Church; Donald Blunt, Trustee of Gospel Church; Jacob Aiken; and Allen Helms. VanSickle also used the following business names: Impartial Lenders, Equity Lenders and Unity Mortgage.

7. Branch Banking and Trust ("BB&T Bank"), Winston-Salem, North Carolina, Farmer and Merchants Bank ("F&M Bank"), Hagerstown, Maryland, and First United Bank & Trust ("First United Bank"), Oakland, Maryland were financial institutions with insurance of accounts by the Federal Deposit Insurance Corporation; Farm Credit of the Virginias, Staunton, Virginia, and AgChoice of Pennsylvania, Mechanicsburg, Pennsylvania were system institutions of the Farm Credit System. All five entities were financial institutions as defined by 18 U.S.C. §20.

## The Scheme to Defraud

8. From on or about June 2000, and continuing until on or about June 2006, in the District of Maryland and elsewhere, the defendant,

**ANGELA M. BLYTHE**

and VanSickle knowingly and willfully devised and intended to devise a scheme and artifice to defraud financial institutions and to obtain money and property from those financial institutions by means of materially false and fraudulent pretenses, representations and promises ("the scheme to defraud"), in that

(1) **BLYTHE** prepared deeds, mortgages and notes for VanSickle in his false identities and then those deeds, mortgages, and notes were recorded in the official land records of Garrett County, Maryland and Preston County, West Virginia, which concealed VanSickle's ownership and control of properties,

(2) VanSickle then entered into land purchase and sale contracts for properties, using his false names and identities,

(3) VanSickle or his nominees obtained loans from financial institutions to finance purchases of the properties,

(4) **BLYTHE** conducted property settlements in which VanSickle participated as buyer, seller, and/or borrower through use of his false identities which **BLYTHE** concealed from the lenders,

(5) **BLYTHE** failed to conduct the settlement transactions as described on the settlement statements, and

(6) **BLYTHE** paid over the seller's proceeds as VanSickle directed.

### The Conspiracy to Defraud

9. From in and around June 2000 through in and around June 2006, in the District of Maryland and elsewhere, the defendant

**ANGELA M. BLYTHE**

did knowingly and willfully conspire, combine, confederate, and agree with VanSickle, and other persons known and unknown to the Grand Jury, to commit bank fraud, that is to knowingly execute and attempt to execute the scheme to defraud financial institutions in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy and Scheme to Defraud

10. It was the object of the conspiracy and scheme to defraud for defendant **BLYTHE** to charge fees including settlement, title examination, document preparation and title insurance fees for the fraudulent transactions and settlements she conducted for VanSickle and for VanSickle to obtain sales proceeds from land transactions settled by **BLYTHE** and funded by victim financial institutions, and for **BLYTHE** and VanSickle to conceal his receipt of those proceeds.

### Manner and Means of the Conspiracy and Scheme to Defraud

11. Beginning by at least June 2000, **BLYTHE** was the settlement attorney for a number of real estate transactions for VanSickle in Garrett County, Maryland and in Preston County, West Virginia. **BLYTHE** conducted real estate transactions for VanSickle in the name of his fictitious identities including the following:

   a. In and around October 2000, **BLYTHE** conducted a settlement in which VanSickle using the alias Jacob Aiken was the seller and VanSickle using his own name was the buyer and borrower of $380,000, more or less, from AgChoice of Pennsylvania;

b.  In and around December 2001, **BLYTHE** conducted a settlement in which VanSickle using his alias Donald Blunt, Trustee for Freedom Church, transferred property in Garrett County Maryland to buyer F.M.

c.  In and around March 2002, **BLYTHE** conducted a settlement in which VanSickle using his alias Donald Blunt, Trustee for Freedom Church, transferred 149 acres in Preston County, West Virginia to Stony Brook Realty, which used loan proceeds of approximately $953,000, more or less, from Farm Credit of the Virginias. In connection with this settlement, VanSickle using his alias Jacob Aiken signed a release of a Unity Mortgage deed of trust on the property which had been prepared by **BLYTHE**.

d.  In and around November 2002, **BLYTHE** conducted a settlement in which VanSickle using his alias Donald Blunt, Trustee of Gospel Church, was the seller and transferred property to himself (VanSickle) as buyer and borrower using a loan from AgChoice of Pennsylvania for $190,000, more or less, which involved 112 acres on the Old Morgantown Road, Garrett County, Maryland.

e.  In and around December 2004, **BLYTHE** conducted a settlement in which VanSickle, using his alias Donald Blunt, Trustee for Gospel Church, transferred 46 acres, more or less, to D.S. and K.S. and caused **BLYTHE** to pay the net sales proceeds to "Unity Mortgage."

### The Woodlands, Deep Creek Lake, Maryland

12.  In July 2003, **BLYTHE** conducted the settlement for the sale of The Woodlands, a subdivision development at Deep Creek Lake in Garrett County, Maryland from VanSickle using the alias Donald Blunt, Gospel Church, to VanSickle using his own name as financed by a $2 million loan from F&M Bank.

5

13. VanSickle was both the buyer and the seller in the transaction, a material fact which **BLYTHE** concealed from F&M Bank. VanSickle bought the property for $200,000 in 1997 and transferred it for no consideration to Gospel Church in April 2001.

14. In connection with the settlement, **BLYTHE** signed as a witness to a $5 million mortgage release executed by Jacob Aiken on behalf of Unity Mortgage and as a witness of $190,000, $90,000, and $160,000 mortgage releases executed by Allen Helms. Neither Jacob Aiken nor Allen Helms existed but were identities used by VanSickle, which **BLYTHE** concealed.

### Red Run, Oakland, MD

15. In and around April 2002, VanSickle provided $600,000 to **BLYTHE** for the settlement of his cousin W.H.B.'s company R&R Lakeside, LLC, to purchase 175 Red Run, Oakland, Maryland for $600,000 from McComas Beach, Inc. [hereafter "Red Run"]. Red Run was a restaurant and bed and breakfast which bordered on Deep Creek Lake, Oakland, MD.

16. At the settlement for the purchase of Red Run, VanSickle caused W.H.B. to sign an Indemnity Deed of Trust on behalf of R&R Lakeside, LLC to Impartial Lenders, LLC, for $2,000,000. The promissory note to pay Impartial Lenders, LLC, was signed in the name of "Allen Helms." VanSickle notarized the signature of "Allan [sic] Helms." **BLYTHE** filed the deed of trust in the land records of Garrett County.

17. In and around April 2003, **BLYTHE** drafted and then filed in the land records of Garrett County a deed transferring Red Run from R&R Lakeside to Gospel Church for $0 consideration. The address of Gospel Church was listed as Post Office Box 156, Accident, MD, a box rented by VanSickle, and used by VanSickle in previous transactions handled by **BLYTHE**. Also in April 2003, a release of the Indemnity Deed of Trust described in Paragraph 16 was

filed in the land records of Garrett County as "paid and satisfied." The Release was signed "Jacob Aiken, Managing Member"; "Jacob Aiken" is an alias for VanSickle.

18. In and around July 2004, Louis W. Strosnider, III, applied to BB&T for a mortgage loan in the amount of $2,250,000 to purchase the Red Run property from Gospel Church.

19. In and around October 2004, **BLYTHE** prepared the settlement statement for the closing of the sale of Red Run from Gospel Church to Strosnider. The statement recited that BB&T as the lender was providing on behalf of Strosnider a loan of $1,725,000 for the purchase; the remainder of the purchase price was made up by a $750,000 down payment and $341,379.94 which BLYTHE was to collect from the buyer Strosnider at settlement. The settlement statement recited that **BLYTHE** was to pay Unity Mortgage $1,972,427.82 from the proceeds.

20. In and around October 2004. **BLYTHE** held a closing in which she failed to conduct the settlement as stated on the settlement statement and concealed that fact from the lender, BB&T.

18 U.S.C. §1349

## COUNT TWO

The Grand Jury for the District of Maryland further alleges:

1. The allegations of Count 1, Paragraphs 1- 8 and 10-20 are incorporated by reference as though fully set forth.

2. On or about October 19, 2004, in the District of Maryland, the defendant

### ANGELA M. BLYTHE

knowingly executed and attempted to execute the scheme and artifice to defraud BB&T and to obtain BB&T's moneys and property by means of materially false and fraudulent pretenses, representations and promises by conducting a fraudulent settlement of the Red Run property sale in that a fictitious person, namely Donald Blunt, Gospel Church, was the seller and the financial transaction including purchase price, buyer's funds to close, and amount of seller's proceeds paid to Unity Mortgage did not occur as stated on the settlement statement executed by **BLYTHE.**

18 U.S.C. §1344

## COUNT THREE

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count 1, Paragraphs 1-7 are incorporated by reference as though fully set forth.

2. On or about October 19, 2004, in the District of Maryland and elsewhere, the defendant

## ANGELA M. BLYTHE

with respect to the loan to purchase Red Run made to Louis W. Strosnider, III, by BB&T knowingly made a false material statement and report for the purpose of influencing in any way the action of BB&T, that is, **BLYTHE** falsely represented and aided and abetted the false representations by VanSickle that she had conducted the Red Run settlement in accordance with the settlement statement when she then and there well knew:

a. that the buyer Louis W. Strosnider, III, had not paid the listed purchase price of $2,725,000.00,

b. that she had not collected $341,379.94, from the buyer Louis W. Strosnider, III,

c. that she had not paid Unity Mortgage $1,972,427.82, and

d. that she had not conducted the settlement with Donald Blunt, trustee for Gospel Church, because Donald Blunt was a fictitious person representing a fictitious entity Gospel Church and was in fact VanSickle.

18 U.S.C. §1014; 18 U.S.C. §2

## COUNT FOUR

The Grand Jury for the District of Maryland further charges:

1. The allegations of Count 1, Paragraphs 1-7 are incorporated by reference as though fully set forth.

2. On or about March 12, 2005, in the District of Maryland and elsewhere, the defendant

### ANGELA M. BLYTHE

with respect to a loan made by First United Bank & Trust for their customers to purchase Lot 6, West Breeze subdivision, Friendsville, MD knowingly made a false material statement and report for the purpose of influencing in any way the action of First United Bank & Trust in that **BLYTHE** falsely represented and aided and abetted the false representations by VanSickle that Donald Blunt, Trustee of Gospel Church, was the seller when she then and there well knew that VanSickle was the seller of the property.

18 U.S.C. §1014; 18 U.S.C. §2

## FORFEITURE

The Grand Jury further finds that:

1.  Pursuant to 18 U.S.C. Section 982(a)(2)(A), upon conviction of an offense in violation of 18 U.S.C. '§ 1349, 1344 and 1014 as alleged in Counts One - Four, the defendant shall forfeit to the United States of America all property, real and personal, which constitutes and is derived from proceeds the person obtained directly and indirectly from the offense.

2.  The property to be forfeited includes a sum of money equal to the value of the BB&T loan which is at least $1,725,000.

3.  If any of the property described above, as a result of any act or omission of the defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property.

18 U.S.C. §982(a)(2)(A); Rule 32.2(a), F.R.Crim.P.; 21 U.S.C. §853(p); 18 U.S.C. §982(b)(1).

Rod J. Rosenstein
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

Foreperson

Date: 12/16/14